# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PHILIP ISIAH GILLAM,

Defendant-Appellant.

UNPUBLISHED
August 16, 2016

No. 326889
Wayne Circuit Court
LC No. 14-008972-FC

Before: BECKERING, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant, Philip Isiah Gillam, appeals by right his convictions of three counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) (penetration involving a person under 13 years of age), and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) (sexual contact with a person under 13 years of age). We affirm.

## I. BACKGROUND FACTS

This case arises out of defendant's sexual assault of his daughter, who was 8 years old at the time of trial, over a several-year period while they were living together, along with the child's mother, at various residences in Detroit, Michigan. The victim first revealed the abuse to her mother, who brought her to the hospital for a physical examination. Anal, perianal, vaginal, cervical, and vulvar swabs taken during the victim's physical examination revealed a strong presence of male DNA. The victim's anal and perianal swabs were sent on for further testing, which revealed that the male DNA matched defendant's DNA.

At trial, Police Sergeant Ronald McPhee testified that he interviewed defendant about the sexual abuse allegations, and during the interview, defendant wrote the victim a letter, telling her that he had hurt her and had done wrong, stating that he was sorry, and asking her to forgive him. A portion of the video recording of the interview was entered into evidence and played for the jury. After playing the video, the prosecutor asked McPhee about a statement he made during the interview, stating, "On the video you said something like: 'Maybe everything that has been said isn't the truth.' Did you have any reason to believe that what has been said previously was not the truth?" McPhee responded, "No." The following exchange then occurred without objection by defense counsel:

-1-

*The Prosecutor.* Do you sometimes say things to people, and including [defendant], that isn't exactly the truth?

*McPhee.* Yes.

*The Prosecutor.* And are you legally allowed to do that?

*McPhee.* Yes.

*The Prosecutor.* Did you in your mind form an opinion about whether [the victim's] story was the truth or not?

*McPhee.* I did form an opinion about the facts that were presented to me, never having spoken with her. And I believe at least a portion of them to be true, yes.

*The Prosecutor.* Okay. So, when you said: "Maybe everything that I've heard, or everything isn't the truth," did you have any reason to believe it wasn't the truth?

*McPhee.* No.

*The Prosecutor.* Okay. So was this sort of a line you fed him?

*McPhee.* Yes.

After closing arguments, the trial court instructed the jury that to convict defendant of two of the counts of CSC I, the prosecutor needed to prove beyond a reasonable doubt that "defendant engaged in a sexual act that involved entry into [the victim's] genital opening by [defendant's] penis. The genital opening is defined as the labia majora, or the [outer] lips. Any entry, no matter how slight, is enough." The court also instructed the jury that it could "only consider the evidence that has been properly admitted in this case," which "includes only the sworn testimony of the witnesses, the exhibits admitted into evidence, and anything else [the court] told you to consider as evidence." The court noted that the jury could use its "own common sense and general knowledge in weighing and judging the evidence," but cautioned the jury that it "should not use any personal knowledge [it has] about a place, person, or event."

During deliberations, the jury asked permission to consult a picture of the female reproductive system from one of the juror's medical textbooks. The trial court then instructed the jury, without objection from defense counsel, as follows:

Any pictures or textbooks that have not been admitted as evidence in the case cannot be used. But if someone wants to draw something on a pad of paper explaining, I mean, what's what in the female reproductive system, if someone has general knowledge about that, they can do that. But we can't bring in some textbook for you to see, because that wasn't admitted as an exhibit. Okay? You're to use your general knowledge as a collective group. So if someone has

knowledge about it and wants to explain it to others that don't, you may do so back in the jury room.

## II. INSTRUCTIONAL ERROR

On appeal, defendant first claims that the trial court erred by instructing the jury that it could use its collective general knowledge to draw the female reproductive system. He further argues that the instruction constituted an extraneous influence on the jury. Defendant did not object to the jury instructions at trial, so we review his unpreserved claim of instructional error for plain error affecting substantial rights. *People v Aldrich*, 246 Mich App 101, 124-125; 631 NW2d 67 (2001). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Even if a defendant meets these three requirements, reversal is only warranted if the error "resulted in the conviction of an actually innocent defendant" or "seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted).

A defendant in a criminal proceeding is entitled to have a properly instructed jury consider the evidence against him. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). "In reviewing claims of error in jury instructions, we examine the instructions in their entirety." *People v Milton*, 257 Mich App 467, 475; 668 NW2d 387 (2003). Jury instructions must include all of the elements of the charged crime, and must not exclude material issues, theories, or defenses if the evidence supports them. *Id.*, citing *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). "Even if the instructions are imperfect, there is no error if they fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Milton*, 257 Mich App at 475.

During their deliberations, jurors may only consider evidence that was properly presented in open court. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*. To show that extraneous facts influenced the jury such that a new trial is required, a defendant must prove that (1) the jury was exposed to an extraneous influence, and (2) the extraneous influence "created a real and substantial possibility that [it] could have affected the jury's verdict." *Id.* at 88-89. It is well known that jurors may and should use their common sense and everyday experience to evaluate evidence. *People v Simon*, 189 Mich App 565, 567; 473 NW2d 785 (1991). Jurors may also refer to "*general knowledge* upon matters *notorious and unquestioned*," limited to "a few matters of elemental experience in human nature, commercial affairs and everyday life." *Id.* at 568 (citation and quotation marks omitted).

Examining the trial court's instructions as a whole, we conclude that the instructions were not erroneous and adequately protected defendant's rights. After the jury asked to examine a picture of the female reproductive system from one of the juror's medical textbooks, the court reiterated that the jury could only consider evidence that was properly admitted at trial, in light of its general knowledge and common sense. We discern no error from the court's instruction that the jury could use its collective general knowledge to draw a picture of the female

-3-

reproductive system. Again, the jury may and should use its "common sense and everyday experience in evaluating evidence," and may refer to its general knowledge on matters of "elemental experience in human nature, commercial affairs and everyday life." *Simon*, 189 Mich App at 567-568. The basics of the female reproductive system represent a matter of elemental experience in human nature and everyday life, such that the jury could properly draw an image of the anatomy to facilitate its deliberations. Therefore, the trial court did not err by providing the jury with the challenged instruction.

Further, the trial court's instruction that the jury must only rely on evidence that was properly admitted at trial, and its general knowledge and common sense, simply does not constitute an extraneous influence. See, e.g., *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 627-628; 769 NW2d 911 (2009) (holding that jurors could take notes and create tools, such as chart summaries of the participants in a case or a timeline of events, to help them analyze the evidence presented); *People v Fletcher*, 260 Mich App 531, 541-544; 679 NW2d 127 (2004) (holding that a jury's reenactment of the events in a case during deliberations did not constitute an extraneous influence requiring reversal). Defendant cannot make a threshold showing that the jury considered any extraneous facts not in evidence that could have affected its verdict. Accordingly, his claim of improper extraneous influence fails.

### III. SERGEANT MCPHEE'S TESTIMONY

Next, defendant argues that McPhee improperly testified that he believed "at least a portion of" the victim's allegations were true, which bolstered the victim's credibility and denied him a fair trial. Defendant did not object to this portion of McPhee's testimony at trial, so our review is limited to plain error affecting substantial rights. *Aldrich*, 246 Mich App at 113.

Generally, it is improper for a witness to comment or provide an opinion on the credibility of another person at trial because it is the province of the jury to determine matters of witness credibility. *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013). Comments by a witness assessing the credibility of another witness have no probative value. *Id.* at 349. Child sexual abuse cases present special considerations "because of the reliability problems created by children's suggestibility in child-sexual abuse prosecutions." *People v Peterson*, 450 Mich 349, 371; 537 NW2d 857 (1995). "To a jury recognizing the awesome dilemma of whom to believe" in a child sexual abuse case, a "seemingly objective source" offers the jury "a much sought-after hook on which to hang its hat." *People v Beckley*, 434 Mich 691, 722; 456 NW2d 391 (1990). Accordingly, opinions related to the truthfulness of an alleged child sexual abuse victim are not permitted in evidence, particularly in cases hinging on credibility assessments. *Musser*, 494 Mich at 357-358.

In this case, we agree with defendant that McPhee's statement that he believed "at least a portion of" the victim's allegations constituted an improper opinion regarding the victim's credibility. The circumstances surrounding the statement make clear that the prosecutor wanted to elicit testimony from McPhee explaining that, although he told defendant during his police interview that the victim's story may not be true, this was only to encourage defendant to talk and McPhee did not actually believe that the victim was lying. However, in response to the prosecutor's question about whether he had "form[ed] an opinion about whether [the victim's] story was the truth or not," McPhee went on to affirmatively opine that at least part of the

-4-

victim's accusations against defendant were true. It was improper for McPhee to provide an opinion on the victim's credibility in this manner, particularly because, as a police officer, McPhee was someone "who would normally command the respect of the jury." *People v Page*, 41 Mich App 99, 102; 199 NW2d 669 (1972). The jury may have been tempted to rely on McPhee's seemingly objective opinion in determining whom to believe in this child sexual abuse case. See *Beckley*, 434 Mich at 722. Therefore, McPhee's statement regarding the victim's truthfulness constitutes plain error.

However, defendant cannot show that this error affected the outcome of the proceedings. See *Carines*, 460 Mich at 763. Although McPhee testified that he believed "at least a portion of" the victim's allegations, he did not specify which allegations he believed. In fact, McPhee's testimony that he believed "at least a portion of" the victim's allegations is equivocal, perhaps suggesting that there were some allegations the victim made that he did not believe. Furthermore, during his police interview, defendant admitted to at least some sexual contact with the victim, which was further evidenced by the fact that he wrote a letter telling the victim that he had hurt her and had done wrong, saying he was sorry, and asking for her forgiveness. Forensic scientists found a strong presence of male DNA on the victim's anal, perianal, vaginal, cervical, and vulvar swabs, and DNA from the victim's anal and perianal swabs was tested and was determined to match defendant's DNA. Accordingly, strong evidence supported that defendant perpetrated some kind of sexual abuse against the victim, and that at least some of the victim's allegations were true. Considering this other evidence, defendant cannot show that McPhee's testimony affected the outcome of the case.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant asserts that his trial counsel was ineffective for failing to object to the trial court's jury instructions and McPhee's testimony regarding the victim's credibility. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LaBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review factual questions for clear error and review constitutional questions de novo. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). When a claim of ineffective assistance of counsel has not been preserved, as is the case here, our review is limited to errors apparent on the record. *Id.*

To demonstrate ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness, and that, absent the deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012). "The defendant must overcome the presumption that the challenged action could have been sound trial strategy." *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). Reviewing courts will not evaluate counsel's decisions with the benefit of hindsight. *Id.*

Defendant first claims that his counsel was ineffective for failing to object to the trial court's jury instructions, but as discussed above, the instructions were proper. Defense counsel cannot be deemed ineffective for failing to raise a meritless objection at trial. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant also argues that his counsel was ineffective for failing to object to McPhee's testimony that he believed "at least a portion of" the

-5-

victim's allegations. Although we agree that this testimony was improper, an attorney's decision to not object to objectionable testimony may be a matter of sound trial strategy. *People v Rodgers*, 248 Mich App 702, 715; 645 NW2d 294 (2001). Immediately after McPhee testified that he told defendant he thought the victim's story might not be true, even though he actually believed at least some of the accusations, defense counsel vigorously cross-examined McPhee regarding the fact that he lied to defendant, arguing that McPhee lied to pressure defendant into making a confession. This strategy could have caused the jury to question the inculpatory statements defendant made during the police interview, and falls within the wide range of reasonable professional assistance. See *LeBlanc*, 465 Mich at 578. The fact that the strategy was not ultimately successfully does not render it objectively unreasonable. *Rodgers*, 248 Mich App at 715.

Moreover, defendant cannot show with a reasonable probability that the outcome of the case would have been different if counsel had successfully objected to McPhee's testimony. As previously discussed, significant evidence, including defendant's letter to the victim, defendant's statements during the police interview, and DNA results, supported that defendant perpetrated some kind of sexual abuse against the victim. Considering this evidence, defendant cannot show with a reasonable probability that McPhee's statement that he believed "at least a portion of" the victim's story influenced the outcome of the trial. Therefore, defendant's ineffective assistance claim fails.

Affirmed.


/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola